Thomas Corry JOYNER, Jr.,
Petitioner-Appellant,

v.

John C. KING, Secretary of La. Dept. of Corrections, and Frank J. Blackburn, Warden, La. State Penitentiary, Respondents-Appellees.

No. 85–3161.

United States Court of Appeals,
Fifth Circuit.

April 18, 1986.

Milton Dale Peacock, Paul Henry Kidd, Monore, La., for petitioner-appellant.

Houston Gascon, Plaquemine, La., for respondents-appellees.

Before GEE, ALVIN B. RUBIN and GARZA, Circuit Judges.

GARZA, Circuit Judge:

This appeal involves the dismissal of petitioner's writ of habeas corpus. The district court held that petitioner had failed to exhaust his state remedies and dismissed the action without prejudice. For the reasons set out below, we affirm.

### FACTS AND PROCEDURAL HISTORY

The underlying conviction in this case involves the murder of two men during a sham drug transaction. Thomas Corry Joyner ("Joyner") and Reginald Ray Kaese ("Kaese") were eventually indicted for first degree murder and arrested. Joyner was tried first, and Kaese was the government's key witness against him.

On May 2, 1975, Joyner was convicted of second degree murder and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence for a period of twenty years. Joyner made no direct appeal, but he sought state habeas relief on two constitutional grounds: the illegality of a search and seizure, and the violation of his confrontation rights under the Sixth Amendment by the state's failure to disclose plea agreements made with his codefendant, Kaese.

Following the denial of habeas relief by the state district court, Joyner applied for a supervisory writ to the Louisiana Supreme Court, which ordered that an evidentiary hearing be held on Joyner's two constitutional claims. *Joyner v. Phelps,* 344 So.2d 380 (La.1977). At the hearing, Joyner litigated extensively his search and seizure claim. He also placed his codefendant, Kaese, on the stand to show that an express or implied plea agreement had been made between Kaese and the state. Kaese, however, on the advice of counsel, continuously invoked a Fifth Amendment privilege in response to Joyner's questions. Joyner also placed several other witnesses on the stand who testified to circumstantial evidence of an express or implied plea arrangement between the authorities and Kaese. Nonetheless, the court denied Joyner relief on both of his claims. Joyner's subsequent application to the Louisiana Supreme Court for another supervisory writ was denied, *Joyner v. Phelps,* 352 So.2d 187 (La.1977), as was his writ of certiorari to the United States Supreme Court. *Joyner v. Phelps,* 435 U.S. 943, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978).

Joyner's habeas petition to the federal district court was initially referred to Magistrate Moran for a report and recommendation. In his report, Magistrate Moran recommended an evidentiary hearing regarding Joyner's Sixth Amendment confrontation claim. This recommendation was based on the finding that Joyner had alleged "facts not considered at the state level and because of Kaese's continuous invocation of the Fifth Amendment at the state habeas hearing."[1] Specifically, Magistrate Moran found that the facts alleged by Joyner, if proven, could establish the existence of a plea bargain between Kaese and the DA's office or the Sheriff's office in Joyner's murder trial. Moreover, it was reasonably likely that a showing of a plea agreement with Kaese, a key witness against Joyner, could have affected the jury's assessment of Kaese's credibility.

In regard to Joyner's Fourth Amendment search and seizure claim, the magistrate found that it had received full and fair treatment by the state court and that review was foreclosed under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Before adopting Magistrate Moran's report, the district court ordered the Iberville Parish District Attorney's office to file affidavits pertaining to the existence and nature of any plea agreements between the state and any other person involved in Joyner's murder prosecution. The state responded by filing the affidavit of former district attorney Samuel C. Cashio, swearing that no agreement or promises had been made with anyone prior to Joyner's trial.

Judge Polozola recommitted the case to a different magistrate, Shelly C. Zwick, on the issue of whether Joyner merited an evidentiary hearing and whether Joyner should be granted relief. Magistrate Zwick concluded that while Joyner appeared to have exhausted his Fourth Amendment claim he had failed to exhaust

---

**1.** Magistrate Moran erroneously concluded that petitioner had shown that pertinent factual issues were not fully and fairly litigated below. See discussion *infra, Evidentiary Hearing.*

his state remedies on the Sixth Amendment claim. She found that Joyner claimed to have new factual proof of a plea arrangement with Kaese and consequently the claim presented to the district court was significantly different than that presented to the state court. Magistrate Zwick recommended dismissal of Joyner's petition in its entirety under the rule of *Rose v. Lundy,* 455 U.S. 509, 521–22, 102 S.Ct. 1198, 1204–05, 71 L.Ed.2d 379 (1982) (state prisoner's Section 2254 habeas petition must be dismissed in its entirety when it contains both exhausted and unexhausted claims).

Joyner objected to both the reassignment of the case to a different magistrate and to the findings and recommendations of Magistrate Zwick. Nonetheless, the district court adopted the second report, found Joyner's objections to be without merit, and denied his application without prejudice. This appeal followed.

Joyner presents two principal issues for review: 1) whether the district court erred in ruling that Joyner had not exhausted his claims in state court, and 2) whether the state waived its right to have the exhaustion requirement satisfied. We will also discuss whether the district court erred in recommitting the case to a second magistrate and whether the court erred in not granting a hearing on the new evidence Joyner sought to present to the district court.

We hold that Joyner failed to exhaust state remedies and affirm the district court on this point. Moreover, we find that the State of Louisiana did not waive its opportunity to assert petitioner's failure to satisfy the exhaustion requirement.

## EXHAUSTION

When the credibility of a witness is a critical issue in a criminal case and proof of any understanding or agreement regarding a related prosecution is relevant to a witness's credibility, the defendant has a right to bring this to the jury's attention. *Giglio v. U.S.,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). To deny the defendant the opportunity to present to the jury any promises, agreements, and understanding between the state and a key prosecution witness deprives the defendant of due process of law. *Id.* Since Kaese was the only eyewitness to the homicide, and was the state's key witness, his credibility was an important issue in Joyner's murder trial.[2] If the legal threshold issue of exhaustion has been satisfied, Joyner may be entitled to an evidentiary hearing in the district court. *See Infra, Evidentiary Hearing.*

Joyner presented the substance of his Sixth Amendment claim to the state court in the evidentiary hearing mandated by the Louisiana Supreme Court. But he now alleges new facts, which came into existence after the state court hearing, that purportedly confirm his allegations.

The cases reflect that the exhaustion requirement has consistently been construed in favor of giving the state the first opportunity to correct any alleged constitutional errors.[3] In *Brown v. Estelle,* 701 F.2d 494

---

**2.** We note that the United States Supreme Court recently heard oral argument in a case to determine whether the absolute denial of cross-examination of a prosecution witness concerning potential bias could ever be harmless error. See *Van Arsdall v. Delaware,* 486 A.2d 1 (Del.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 3552, 87 L.Ed.2d 674 (1985) (oral argument summarized in 54 U.S.L.W. 3545 (Feb. 25, 1986)).

**3.** This requirement has been codified at 28 U.S.C. § 2254. Section 2254 provides in pertinent part:

    (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the court of the State, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

    (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

For a brief history of the exhaustion doctrine see *Vela v. Estelle,* 708 F.2d 954, 957–58 (5th Cir.1983) *cert. denied sub nom McKaskle v. Vela,*

(5th Cir.1983), we held that when a claim in a significantly different and stronger evidentiary posture than it was before the state courts is filed in federal court, the exhaustion doctrine required, nonetheless, further proceedings in state court. *Id.* at 495–96. In *Burns v. Estelle,* 695 F.2d 847 (5th Cir.1983), we held that a state habeas petitioner who presented in federal court entirely new evidence of his claim of ineffective assistance of counsel had failed to satisfy the exhaustion requirement. *Id.* at 849–50. In *Hart v. Estelle,* 634 F.2d 987 (5th Cir.1981), we remanded with instructions to dismiss without prejudice a habeas petition that presented no medical testimony of petitioner's competency to stand trial to the state court but then sought to introduce medical testimony in support of this claim to the federal court. We held that the presentation of a "weak case" to the state court and of a "strong case" to the federal court failed to satisfy the exhaustion requirement. *Id.* at 989. And in *Knoxson v. Estelle,* 574 F.2d 1339 (5th Cir.1978), we remanded with instructions to dismiss without prejudice a habeas case in which a petitioner filed a post-submission brief containing new factual allegations in support of his legal plea. *Id.* at 1340.

Joyner's new factual allegations include several items of evidence. He points out that subsequent to his conviction, Kaese's trial was postponed indefinitely. Kaese eventually pleaded guilty to the less serious offense of manslaughter and received an extremely lenient sentence, including credit for time served. According to Joyner, Kaese's guilty plea was taken surreptitiously in a jury room closed to the public, rather than in open court, and was attended by Kaese's counsel, Mr. Marionneaux, and a deputy sheriff, Ralph Stassi. Joyner

says that the court reporter present at this proceeding is willing to testify on Joyner's behalf.

Joyner also contends that in a local newspaper article the district attorney, Samuel Cashio, indicated that he was negotiating a plea arrangement with Kaese's attorney in return for Kaese's testimony, and that the newsmen who conducted the interview are available to testify. Joyner also says that a fellow inmate of Kaese, Dewayne F. Hall, was privy to information that a "three way deal" had been cut with Kaese and would testify for Joyner.

Finally, Joyner contends that Kaese's continuous invocation of the Fifth Amendment during the state habeas evidentiary hearing prevented him from developing facts pertinent to the existence vel non of any plea agreements or understandings. Moreover, even though the state court judge held Kaese in contempt several times, no measures were taken against Kaese.

■ At oral argument, the state conceded that these, and other allegations, if true, probably entitled Joyner to relief. These claims, however, do not override the policies of comity and federalism underlying the doctrine of exhaustion. That is not to say that exhaustion is a jurisdictional matter, *see Vela, supra,* 708 F.2d at 958, but we are unwilling to depart from a settled rule to accommodate new factual allegations in support of a previously asserted legal theory, even though these factual allegations came into existence after state habeas relief had been denied. Joyner has not demonstrated that referring him back to state court would be futile[4]

---

464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984).

**4.** Section 2254 recognizes the defense of futility as mitigating the exhaustion requirement. *See* Section 2254(b), *supra* note 3. But it also requires that petitioner raise before the state court, "by any available procedure, the question presented." *See id.*

Petitioner briefly addressed the issue of the futility of returning to a state forum. However,

the gist of his argument focused on allegations of the bad faith and conspiratorial actions of state officials in the disposition of the case against Kaese and at the state habeas hearing. We are, however, in no position to judge these accusations and briefing on this point would have been more helpful to the court if it had argued legal reasons, grounded on established facts, why referral to the state court would serve no useful purpose.

and we affirm the district court on this issue.

## WAIVER

Joyner also contends that even if he did not satisfy the exhaustion requirement, we can still reach the merits of his petition because the state waived exhaustion when it failed to object to Magistrate Moran's report. Joyner cites *Hopkins v. Jarvis*, 648 F.2d 981 (5th Cir.1981), as authority for his contention that the state may constructively waive exhaustion. In *Hopkins*, the state had raised exhaustion in its answer to a habeas petition but then failed to object to a magistrate's finding that petitioner had exhausted his state remedies. *Id.* at 983 n. 2. We construed this as a waiver of the exhaustion requirement and proceeded to hear the case on its merits.

■ In *Hopkins*, however, the district court had adopted the magistrate's report when it issued an order based on that report. Here, Judge Polozola never adopted the report of Magistrate Moran. Instead, he ordered additional evidence in the form of affidavits filed, and recommitted the matter to another magistrate. We recognize that to preserve error for review by both the district and the appellate court counsel must timely object to the unfavorable findings and recommendations of a magistrate. 28 U.S.C. § 636(b)(1). Joyner contends that the district court was merely "window shopping" for a magistrate's report to its liking.[5] But district courts have great latitude in the assignment of matters to their magistrates and before accepting, rejecting, or modifying a magistrate's report "a judge may also receive further evidence or recommit the matter to the

magistrate with instruction." *Id.* The state's failure to object to Magistrate Moran's report or to assert the exhaustion requirement at this juncture had no legal effect and did not constitute a waiver. We therefore refuse to disturb the district court's disposition of this petition on grounds of waiver.

## EVIDENTIARY HEARING

■ Finally, Joyner contends that the district court erred in not granting him an evidentiary hearing after he objected to Magistrate Zwick's report. In a post-argument memorandum of law, Joyner argues that the United States Supreme Court in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and our en banc decision in *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981), mandates a federal evidentiary hearing in cases where the alleged facts, if true, would entitle petitioner to relief or where petitioner did not receive a full and fair evidentiary hearing in state court.[6]

■ This argument, however, misses the mark. *Townsend* dealt with the slippery issue of when an evidentiary hearing was mandatory in federal habeas cases. Since the exhaustion requirement gives state courts the initial opportunity to make factual findings, federal courts rely on the record generated in state court to make rulings on the merits of constitutional claims. These claims must be evaluated according to federal standards,[7] however, and the record generated in state court may not provide a sufficient evidentiary foundation on which to base a ruling. Proceeding cautiously to avoid making the test overly rigid, *Townsend* sought to list those

---

**5.** We take judicial notice that Magistrate Moran retired on December 30, 1983, and was replaced by Magistrate Zwick, to whom Joyner's case was recommitted.

**6.** Ironically, but for his allegation of new facts, petitioner may have satisfied both the exhaustion requirement and, in view of Kaese's uncooperative nature at the state habeas corpus hearing, the conditions for entitlement to a federal evidentiary hearing. Petitioner's new factual allegations, while probably strengthening his

case, also led him to run afoul of the exhaustion doctrine.

**7.** *West v. State of Louisiana*, 478 F.2d 1026, 1031–32 (5th Cir.1973), *modified en banc on other grounds*, 510 F.2d 363 (1975) (obligation of a federal judge is to apply proper federal constitutional standards based on underlying facts even though the federal court's conclusions may differ from the state court's conclusions).

instances in which a federal evidentiary hearing was mandatory. *See* 372 U.S. at 312–14, 83 S.Ct. at 756–57. After *Townsend* came down, Section 2254 was amended in an attempt to codify the ruling in *Townsend.* 28 U.S.C. § 2254(d). But the statutory criteria differs from that set out in *Townsend* in that it simply establishes a presumption that the state court judgment is correct and that the state court record provides an adequate basis for dispensing with the federal hearing.[8] Regardless of the interplay between *Townsend* and Section 2254(d), resolution of this appeal turns solely on the legal question of exhaustion, and the district court could not have erred or abused its discretion in refusing to grant Joyner a hearing on the merits of his claim.

The disposition of this case by the district court is in all respects AFFIRMED.

8. *See, Guice, supra,* 661 F.2d at 500–01 for a more thorough analysis of the interplay between the *Townsend* criteria and the statutory pronouncements. *See also* 28 U.S.C. § 2254(d) and Rule 8 of the Rules Governing Section 2254 Cases.